## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

PHILADELPHIA INDEMNITY     )
INSURANCE CO.,                  )
                               )
          Plaintiff,         )
                               )
v.                                   )    Civil Action No. 3:25-cv-120–HEH
                               )
TLC HOME HEALTH, INC., *et al.*,    )
                               )
          Defendants.       )

## MEMORANDUM OPINION
### (Resolving Cross-Motions for Summary Judgment)

THIS MATTER comes before the Court on cross-motions for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant Larry Wood, Jr. ("Defendant") filed his Cross-Motion for Summary Judgment ("Defendant's Motion," ECF No. 41), together with his Memorandum of Law in Support (Mem. in Supp., ECF No. 42), on February 20, 2026. Plaintiff Philadelphia Indemnity Insurance Company ("Plaintiff") filed its Motion for Summary Judgment ("Plaintiff's Motion," ECF No. 43) the same day. The Court heard oral argument on May 18, 2026. For the reasons that follow, the Court will GRANT Plaintiff's Motion for Summary Judgment (ECF No. 43) and DENY Defendant's Cross-Motion for Summary Judgment (ECF No. 41).

## I. BACKGROUND

Plaintiff is an insurance company that issued two insurance policies to TLC Home Health, Inc. ("TLC"): a Business Auto Liability Policy (the "Primary Policy") and a

Commercial Umbrella Policy (the "Umbrella Policy"). (Compl. ¶¶ 15, 18.) Plaintiff brought this action seeking a declaratory judgment to determine its obligations to TLC and Defendant Aelijah Christian ("Christian") under both policies. (*Id.* ¶¶ 29–32.)

On January 21, 2023, an automobile accident occurred in Colonial Heights, Virginia, between a vehicle operated by Christian and a vehicle operated by Defendant Larry Wood. (*Id.* ¶ 8.) The vehicle operated by Christian was owned by TLC. (*Id.* ¶ 11.) Defendant initiated a lawsuit against both Christian and TLC—the alleged employer of Christian—in the Circuit Court for the City of Colonial Heights (the "Underlying Lawsuit"), which proceeded to trial on December 12, 2024. (*Id.* ¶¶ 8, 12.) At the conclusion of trial, the court granted TLC's motion to strike based on the lack of evidence that Christian was an agent or employee of TLC. (*Id.* ¶ 13.) The jury returned a verdict against Christian and in favor of Defendant in the principal amount of $4,350,000. (Mem. in Supp. ¶ 8.)[1]

Following the verdict, Defendant received partial satisfaction of the judgment from two sources. He received $50,000 from Progressive Northern Insurance Company ("Progressive"), representing the limit of liability under a policy issued by Progressive to Christian personally. (Williams' Decl., ECF No. 42-1 ¶¶ 6, 8.) He also received $300,000 from GEICO Advantage Insurance Company ("GEICO"), representing the

---

[1] The Complaint alleges a judgment of $5,850,604 (Compl. ¶ 14), but the parties' Joint Stipulations of Fact and Defendant's Memorandum in Support confirm that the jury returned a verdict of $4,350,000 in principal. (Mem. in Supp. ¶ 8 & n.3.) The discrepancy is not material to the present motions because the unsatisfied portion of the judgment exceeds Plaintiff's $2,000,000 limit of liability under the Umbrella Policy in either case.

limit of liability under a policy issued by GEICO to Christian's parents, Tamara Y. Blow and Eugene Blow. (*Id.* ¶¶ 7–8.) Defendant Larry Wood thereafter demanded that Plaintiff tender its $2,000,000 limit of liability under the Umbrella Policy. (Mem. in Supp. ¶ 12.) Plaintiff refused. (*Id.* ¶ 14.)

The Primary Policy (Commercial Lines Policy No. PHPK2441579) is Philadelphia Indemnity's commercial auto liability policy issued to TLC Home Health, and it covers only vehicles that TLC leased, hired, rented, borrowed, or did not own. Notably, the Primary Policy excluded vehicles owned by TLC. (Compl. ¶ 16; the "Umbrella Policy" ECF No. 40-1 at 13.) The Umbrella Policy (Commercial Umbrella Policy No. PHUB824847), also issued by Plaintiff to TLC, is a broader excess liability policy designed to provide additional coverage once the underlying policy's limits are exhausted. (Mem. in Supp. ¶ 1; Umbrella Policy at 11, 17.)

The central dispute turns on the Automobile Liability (Sublimit) Endorsement within the Umbrella Policy, which Plaintiff argues limits the Umbrella Policy's auto coverage to the same scope as the Primary Policy—meaning that because the Primary Policy does not cover TLC-owned vehicles, neither does the Umbrella Policy. While Defendant argues that the Umbrella Policy's broader definition of "underlying insurance," which expressly includes "any other insurance available to the insured," independently triggers coverage for Christian regardless of the Primary Policy's limitations. (Policy at 44, 58; Mem. in Supp. ¶¶ 40–51.)

Plaintiff contends that because Christian was driving a vehicle owned by TLC, the vehicle is not a "covered auto" under the Primary Policy nor the Umbrella Policy. If

3

Plaintiff is correct, then neither the Primary Policy nor the Umbrella Policy would provide coverage for Christian for the damages awarded in the Underlying Lawsuit. (Compl. ¶ 23.) Because Christian was driving a vehicle owned by TLC, Plaintiff asserts that the vehicle was not a "covered auto" under the Primary Policy. (*Id.* ¶ 17.) Defendant Wood does not dispute this conclusion as to the Primary Policy. ("Stipulation," ECF No. 40 ¶¶ 3–4.) The dispute instead centers on the scope of coverage under the Umbrella Policy.

The following chart summarizes the policies referenced in the pleadings.[2]

## 1. Policy Chart

| Policy | Insurer | Named Insured | Alleged to Cover | Status in Case |
|---|---|---|---|---|
| Primary Auto Business Liability Policy (No. PHPK2441579) | Plaintiff | TLC Home Health, Inc. | Vehicles TLC hired, leased, rented, borrowed, or did not own—not TLC-owned vehicles | Uncontested; does not cover Christian |
| Commercial Umbrella Policy (No. PHUB824847), including Automobile Liability (Sublimit) Endorsement | Plaintiff | TLC Home Health, Inc. | Defendant argues it independently covers Christian; Plaintiff argues it is capped by the Primary Policy and excludes Christian | Central dispute |
| Personal Auto Policy (Progressive Northern Insurance Co.) | Progressive Northern Insurance Co. | Christian (personally) | Christian's own liability; paid $50,000 limit toward Defendant's judgment | Exhausted |

---

[2] The chart is a demonstrative aid which does not substitute for a recitation of the facts. Proper citations follow below.

| Personal Auto Policy (No. 2006-12-61-44) | GEICO Advantage Insurance Co. | Tamara Y. Blow and Eugene Blow (Christian's parents) | Christian's liability as a permissive user; paid $300,000 limit toward Defendant's judgment | Exhausted; Defendant argues it qualifies as "underlying insurance" under the Umbrella Policy |
| --- | --- | --- | --- | --- |
| Unspecified Policy (Penn National Mutual Casualty Insurance Co.) | Pennsylvania National Mutual Casualty Insurance Co. | Defendant (Larry Wood, Jr.) | Defendant's own coverage as the injured party | Peripheral; raised only in Defendant's failed motion to dismiss |

Central to the present dispute is the proper interpretation of the Automobile Liability (Sublimit) Endorsement (the "Endorsement") contained within the Umbrella Policy. (Policy at 58.) The Endorsement provides, in full:

> *Notwithstanding any provision to the contrary*, this policy will provide auto liability coverage subject to the AUTOMOBILE LIABILITY SUB-LIMIT shown in the endorsement SCHEDULE above. This sub-limit is part of, and not in addition to, the Limits of Insurance stated in the Declarations.
>
> The auto liability insurance provided will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance" shown in the Schedule of Underlying Insurance *unless otherwise directed* by this policy, or an endorsement to this policy.
>
> To the extent such provisions differ or conflict, the provisions of this policy will apply. However, the coverage provided under this policy *will not be broader than that provided by the applicable "underlying insurance."*

(Policy at 58) (emphasis added). The Primary Policy is the only auto liability insurance listed in the Schedule of Underlying Insurance.[3]  (*Id.* at 13–15.)

---

[3] The "Schedule of Underlying Insurance" is the listing contained in the Umbrella Policy's Declarations that identifies, by insurer, policy number, policy period, and limits

Plaintiff contends that the Endorsement is clear and unambiguous, and that it expressly limits auto liability coverage under the Umbrella Policy to the same terms and exclusions as the Primary Policy. In turn, Plaintiff argues that since the Primary Policy does not cover TLC-owned vehicles, the Umbrella Policy accordingly does not cover Christian for the accident at issue. (Pl.'s Mot. at 5–8; ECF No. 45 at 3–6.)

Defendant's request that the Court grant summary judgment in his favor is based on well-settled Virginia law: when a genuine ambiguity is present in an insurance policy, Virginia courts resolve that ambiguity in favor of coverage. *TravCo Ins. Co. v. Ward*, 284 Va. 547, 553 (2012). Defendant advances two theories of ambiguity within the Endorsement itself, which he contends require a finding in favor of coverage. First, he argues that the Endorsement's opening language—"[n]otwithstanding any provision to the contrary"—conflicts irreconcilably with the second paragraph's qualification that the Endorsement's rules apply "unless otherwise directed by this policy, or an endorsement to this policy." (Def.'s Mem. in Opp'n, ECF No. 44 ¶¶ 7–14.) Second, he argues that the Endorsement's use of two different phrasings—"applicable 'underlying insurance' shown in the Schedule of Underlying Insurance" in the second paragraph, as opposed to simply "applicable 'underlying insurance'" in the third—indicates that the drafters intended the two phrases to mean different things. On Defendant's reading, the third paragraph therefore incorporates the broader definition of "underlying insurance" found elsewhere in the Umbrella Policy. (*Id.* ¶¶ 15–23.)

---

of liability, each specific primary insurance policy on which the Umbrella Policy rests. (Policy at 13–15.)

## II. LEGAL STANDARD

### A. Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that might affect the outcome of a party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue concerning a material fact arises when the evidence is sufficient to allow a reasonable trier of fact to return a verdict in the party's favor. *Id.* At the summary judgment stage, the Court views the facts and all reasonable inferences in the light most favorable to the nonmoving party. *United States v. 8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 252 (4th Cir. 2022). Where, as here, the parties have filed cross-motions for summary judgment, the court must "consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (internal quotation marks omitted).

### B. Interpretation of Insurance Policies Under Virginia Law

Because this action arises under diversity jurisdiction, the Court applies the substantive law of Virginia, including its rules of contract interpretation. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). The parties agree, and the record confirms, that the Umbrella Policy was issued and delivered in Virginia. (Mem. in Supp. at 5; Mem. in Opp'n at 1.) The substantive law of Virginia therefore governs the

Policy's interpretation. *See Lexie v. State Farm Mut. Auto. Ins. Co.*, 251 Va. 390, 394 (1996).

Under Virginia law, "[c]ourts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document." *TravCo*, 284 Va. at 552. Where the language of a policy is clear and unambiguous, the court must enforce it as written. *Midlothian Enters., Inc. v. Owners Ins. Co.*, 439 F. Supp. 3d 737, 741 (E.D. Va. 2020). "An ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time." *Lincoln Nat'l Life Ins. Co. v. Commonwealth Corrugated Container Corp.*, 229 Va. 132, 136–37 (1985).

A court "must not strain to find ambiguities," and "[c]onflicting interpretations of an insurance policy reveal an ambiguity only where they are reasonable." *Midlothian*, 439 F. Supp. 3d at 741 (citing *Erie Ins. Exch. v. EPC MD 15, LLC*, 297 Va. 21, 29 (2019)). Policies are not ambiguous "merely because the parties disagree about the meaning of the language." Nor does the mere fact that a party "can hypothesize" an alternative reading render a provision ambiguous. *Erie*, 297 Va. at 29. In construing policy language, "a court should not myopically focus on a word here or a phrase there but should look at a word in the context of a sentence, a sentence in the context of a paragraph, and a paragraph in the context of the entire agreement." *Midlothian*, 439 F. Supp. 3d at 741 (quoting *Levine v. Emp'rs Ins. Co. of Wausau*, 887 F.3d 623, 632 (4th Cir. 2018)). Virginia courts likewise "will not read contracts to produce absurd results." *Mount Aldie, LLC v. Land Tr. of Va., Inc.*, 293 Va. 190, 200 (2017).

When, however, a genuine ambiguity is found, Virginia courts resolve that ambiguity in favor of coverage. *TravCo*, 284 Va. at 553 (policy language "where there is doubt as to [its] meaning" should be construed "in favor of that interpretation which grants coverage, rather than that which withholds it"); *St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co.*, 227 Va. 407, 411 (1984) ("Where two constructions are equally possible, that most favorable to the insured will be adopted.").

Two other interpretive principles are relevant to this dispute. First, an endorsement that modifies an insurance policy must be given effect where its language is clear and unambiguous, and the underlying policy "remains in full force and effect except as altered by the words of the endorsement." *PBM Nutritionals, LLC v. Lexington Ins. Co.*, 283 Va. 624, 635 (2012) (citation omitted). Second, where two provisions of a contract conflict and one specifically addresses the dispute at hand while the other remains general, the specific provision governs over the general. *Appalachian Reg'l Healthcare v. Cunningham*, 294 Va. 363, 373 n.9 (2017); *Levine*, 887 F.3d at 630.

## III. DISCUSSION

The parties agree that (1) Christian was operating a TLC-owned vehicle at the time of the accident, (2) the Primary Policy does not cover TLC-owned vehicles, and (3) no coverage is therefore available to Christian under the Primary Policy. (Stipulation ¶¶ 3–4.) The sole question before the Court is whether the Umbrella Policy, and in particular the Automobile Liability (Sublimit) Endorsement contained within it, provides coverage where the Primary Policy does not. The Court concludes that it does not.

9

## A. The Best Reading of the Endorsement

The Endorsement expressly announces that it "modifies" the insurance provided under the Commercial Umbrella Liability Insurance Policy. (Policy at 58.) Read as a whole, the three paragraphs of the Endorsement establish a coherent and unambiguous framework for auto liability coverage under the Umbrella Policy. The first paragraph fixes the dollar amount of coverage, establishing that the Umbrella Policy "will provide auto liability coverage subject to the AUTOMOBILE LIABILITY SUB-LIMIT," and declaring that the sublimit applies "[n]otwithstanding any provision to the contrary" elsewhere in the Policy. (*Id.*) Next, the second paragraph defines the scope and terms of that coverage, providing that auto liability insurance "will follow the same provisions, exclusions and limitations" contained in the "applicable 'underlying insurance' shown in the Schedule of Underlying Insurance." (*Id.*) Finally, the third paragraph resolves conflicts, providing that where the Primary Policy and the Umbrella Policy differ, the Umbrella Policy governs, but that in no event will coverage under the Umbrella Policy be "broader than that provided by the applicable 'underlying insurance.'" (*Id.*)

The only policy of auto liability insurance listed in the Schedule of Underlying Insurance is the Primary Policy. (*Id.* at 13–15.) By the express terms of the Endorsement, therefore, the Umbrella Policy's auto liability coverage is limited to the provisions, exclusions, and limitations of the Primary Policy, and cannot extend beyond the scope of the Primary Policy's coverage. (*Id.* at 58; *see also* Stipulation ¶¶ 3–4.) The Primary Policy only covers vehicles TLC leased, hired, rented, borrowed, or did not own, and is clear that it does not cover vehicles owned by TLC. Further, Defendant has

10

conceded that the Primary Policy did not insure the vehicle Christian was driving. For these reasons, the Primary Policy affords no coverage here. (Compl. ¶¶ 16–17; Stipulation ¶¶ 3–4.)

Because the Umbrella Policy's auto liability coverage "will not be broader than" that of the Primary Policy (Policy at 58), and given that Christian was operating a vehicle owned by TLC with TLC's permission at the time of the accident (Stipulation ¶ 1; Compl. ¶ 11), the Umbrella Policy therefore does not cover the TLC-owned vehicle Christian operated at the time of the accident. Otherwise put, the Endorsement caps the Umbrella Policy's auto coverage at the scope of the Primary Policy, and as the Primary Policy does not cover TLC-owned vehicles, the Umbrella Policy therefore does not cover Christian. This conclusion follows directly from the text of the Endorsement, and it gives effect to every word of the three paragraphs. *See PBM Nutritionals*, 283 Va. at 635.

Defendant's first theory of ambiguity rests on the premise that the Endorsement's opening clause "[n]otwithstanding any provision to the contrary" conflicts with the second paragraph's qualification that the Endorsement's coverage rules apply "unless otherwise directed by this policy." (Def.'s Mem. in Opp'n ¶¶ 7–14.) According to Defendant, these two phrasings cannot both be true: either the Endorsement is supreme over the Umbrella Policy, or the Umbrella Policy can override the Endorsement, but not both. (*Id.* ¶ 12.) Because the Endorsement purportedly cannot decide which controls, Defendant contends, it must therefore be deemed ambiguous and construed in favor of coverage. (*Id.* ¶ 14.)

11

Defendant is correct that his interpretation creates a technical ambiguity within the terms of the Endorsement. The Court cannot, however, make unreasonable inferences which in effect "strain to find ambiguities." *Midlothian*, 439 F. Supp. 3d at 741. Even where insurance contracts like the one at issue here frequently contain specialized and technical language, "[w]ords that the parties used are normally given their usual, ordinary, and popular meaning." *City of Chesapeake v. States Self–Insurers Risk Retention Group, Inc.*, 271 Va. 574, 578 (2006) (citation modified). Read in context, the two phrasings address different subjects and do not conflict. The "notwithstanding" language in the first paragraph governs the *amount* of auto liability coverage, fixing it at the sublimit shown in the Endorsement's Schedule regardless of any contrary dollar limit elsewhere in the Umbrella Policy. (Policy at 58.) The "unless otherwise directed" language in the second paragraph governs the *scope and terms* of that coverage, incorporating the Primary Policy's provisions unless the Umbrella Policy specifically directs otherwise. (*Id.*) "Notwithstanding any provision to the contrary" is, as Plaintiff correctly notes, standard drafting language used to give one provision priority over potentially inconsistent language elsewhere in the policy—here, over any differing dollar limit. (ECF No. 48 at 3.) It does not render the Endorsement immune from qualification elsewhere in its own text.

Moreover, Defendant identifies no provision in the Umbrella Policy that purports to "otherwise direct" coverage beyond the scope of the Primary Policy. The second paragraph's qualifying clause is, on this record, without any contrary provision to operate upon. The qualification does not undo the Endorsement; it simply leaves room for an

exception that has not materialized in this instance.  Indeed, Defendant's argument depends on the hypothetical existence of a provision elsewhere in the Umbrella Policy that "otherwise directs" coverage broader than that in the Primary Policy.  Yet, he identifies no such provision, and the mere fact that one could hypothetically exist does not render the Endorsement ambiguous.  *See Erie*, 297 Va. at 29.

Virginia law does not permit the reading Defendant urges.  Conflicting interpretations only reveal an ambiguity where both interpretations are reasonable.  *Erie*, 297 Va. at 29.  Defendant's proposed reading would render the Endorsement self-negating—a three-paragraph provision that cancels itself out in its second sentence.  It is difficult to imagine that the drafters intended to enter into a contract whose terms immediately rendered it void.  Virginia courts "will not read contracts to produce absurd results."  *Mount Aldie*, 293 Va. at 200.  Accordingly, the Court rejects Defendant's first interpretation of the Endorsement.

Defendant's second theory of ambiguity rests on the observation that the Endorsement uses the phrase "applicable 'underlying insurance' shown in the Schedule of Underlying Insurance" in its second paragraph, before then using the less specific "applicable 'underlying insurance'" in its third.  (Def.'s Mem. in Opp'n ¶¶ 15–23.)  Invoking the canon against surplusage, Defendant argues that the omission of "shown in the Schedule" in the third paragraph must have been deliberate.  That omission therefore triggers the broader general definition of "underlying insurance" set forth elsewhere in the Umbrella Policy—a definition that includes "any other insurance available to the

13

insured" and would sweep in the GEICO policy issued to Christian's parents. (*Id.*; *see* Policy at 44.)

The surplusage canon is a presumption, not a command. "No word or clause in a contract will be treated as meaningless *if a reasonable meaning can be given to it*, and there is a presumption that the parties have not used words needlessly." *Dominion Sav. Bank, F.S.B. v. Costello*, 257 Va. 413, 417 (1999) (emphasis added). Where a drafting variation can be reconciled with the surrounding text, the canon does not demand that the variation be read as a deliberate signal of two distinct meanings.

The word "applicable," which appears in both paragraphs, reconciles the purported ambiguity. (Policy at 58.) The second paragraph specifically defines "the *applicable* 'underlying insurance'" as the insurance "shown in the Schedule of Underlying Insurance"—which, by Defendant's own concession, is the Primary Policy. (Def.'s Mem. in Opp'n ¶ 20)(emphasis added.) Having so defined the term, the Endorsement's use of the same qualifier—"applicable"—three lines later in the third paragraph is most naturally read as incorporating that defined meaning. The alternative reading—that "the applicable 'underlying insurance'" refers to a specifically identified policy in the second paragraph and then silently shifts to a broader, undefined category in the third—is not a reasonable one.

This conclusion also accords with the principle that specific contract provisions govern over general ones dealing with the same subject matter. *Levine v. Emps. Ins. Co. of Wausau*, 887 F.3d 623, 630 (4th Cir. 2018); *Appalachian Reg'l Healthcare v. Cunningham*, 294 Va. 363, 373, n.9. The Endorsement's specific identification of the

14

Primary Policy as the "applicable 'underlying insurance'" is precisely the kind of specific provision that controls over the Umbrella Policy's general definition of "underlying insurance." *See PBM Nutritionals*, 283 Va. at 635 (endorsement governs where its language is clear).

Defendant's reading would also produce an unreasonable result. Under Defendant's construction, the scope of the Umbrella Policy's auto liability coverage would not be fixed by reference to the policy TLC bargained for and scheduled, but would instead shift from claim to claim depending on the unrelated insurance arrangements of whichever permissive user happened to be behind the wheel. Nothing in the Umbrella Policy supports such a reading, and the Court declines to adopt a construction that would produce an outcome so unmoored from the parties' expressed intent. *See TravCo*, 284 Va. at 552; *Mount Aldie*, 293 Va. at 200.

Because the Endorsement is unambiguous, the pro-coverage canon is not implicated. Virginia's rule of construction in favor of coverage applies only where a genuine ambiguity exists. *TravCo*, 284 Va. at 553. Having rejected both of Defendant's theories of ambiguity, the Court must give effect to the Endorsement as written. Giving effect to the Endorsement as written, the Umbrella Policy's auto liability coverage follows the provisions, exclusions, and limitations of the Primary Policy, and is not broader than the coverage provided by the Primary Policy. The Primary Policy does not cover TLC-owned vehicles. Thus, it follows that the Umbrella Policy does not cover Christian for the judgment entered against him in the Underlying Lawsuit. Plaintiff is

therefore entitled to summary judgment on its declaratory judgment claim, and the Court

will deny Defendant's Cross-Motion for Summary Judgment.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No.

43) will be GRANTED, and Defendant's Cross-Motion for Summary Judgment (ECF

No. 41) will be DENIED.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: June 4, 2026
Richmond, Virginia

16