IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

      Plaintiff,

            v.

TLC HOME HEALTH, INC., *et al.*,

      Defendants.

Civil Action No. 3:25-cv-00120

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Philadelphia Indemnity Insurance Company's ("Philadelphia") Motion for Default Judgment (the "Motion") against Defendants Aelijah M. Christian ("Christian") and TLC Home Health, Inc. ("TLC"). (ECF No. 56.) Philadelphia brings the Motion pursuant to Federal Rule of Civil Procedure 55(b)(2) and the Court's Order directing Philadelphia to advise how it intended to proceed against the two defaulted Defendants following the entry of summary judgment in Philadelphia's favor. (ECF No. 53.) The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process. For the reasons articulated below, the Court will grant the Motion, enter default judgment against Mr. Christian and TLC, and close this action.

## I.  Factual and Procedural Background[1]

### A.      The Underlying Accident and State-Court Judgment

This declaratory judgment action arises out of a motor vehicle accident and the substantial judgment that followed.  On January 21, 2023, Mr. Christian was operating a vehicle owned by TLC with TLC's permission when he collided with Larry Wood, Jr. ("Wood") in Colonial Heights, Virginia.  Mr. Wood sued Mr. Christian and TLC in the Circuit Court for the City of Colonial Heights, alleging that Mr. Christian negligently caused the accident while acting as TLC's employee or agent.  *See Wood v. TLC Home Health, Inc.*, No. CL23000480-00 (Va. Cir. Ct.) (the "Underlying Lawsuit").  The state court struck Mr. Wood's claims against TLC for want of evidence that Mr. Christian was TLC's agent, but the jury returned a verdict against Mr. Christian in the principal amount of $4,350,000, upon which the Circuit Court entered judgment. (ECF No. 1 ¶¶ 13–14; ECF No. 42 ¶ 8 & n.3.)  Mr. Wood subsequently recovered $50,000 from Mr. Christian's insurer, Progressive Northern Insurance Company, and $300,000 from GEICO Advantage Insurance Company, leaving a substantial portion of the judgment unsatisfied.  (ECF No. 42 ¶¶ 10–11, 38.)

### B.      The Philadelphia Policies and the Coverage Dispute

Philadelphia had issued two policies to TLC:  a primary commercial automobile liability policy (the "Primary Policy") and a commercial umbrella policy carrying a $2,000,000 limit of

---

[1] The following facts are drawn from Philadelphia's Complaint, (ECF No. 1), its Motions, and all attached documents submitted with those filings, as the Defaulting Defendants have not responded to the Complaint. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (requiring a court considering a default motion to determine whether a plaintiff's well-pleaded allegations support the relief sought); *Sealed Plaintiff 1 v. Patriot Front*, No. 3:22-cv-670, 2026 WL 561098, at *7–8 (E.D. Va. Feb. 27, 2026). ("Before entry of default judgment, the Court must determine whether the allegations in the complaint support the relief sought.").

2

liability (the "Umbrella Policy"). (ECF No. 40 ¶ 5; ECF No. 40-1, at 11; *see* ECF No. 42 ¶ 1 & n.1.) Mr. Wood demanded that Philadelphia indemnify Mr. Christian under the Umbrella Policy. Philadelphia refused, contending that neither policy affords coverage because the vehicle Mr. Christian was driving was owned by TLC and therefore fell outside the scope of coverage because only hired or non-TLC owned vehicles are covered by the policies. (ECF No. 1 ¶¶ 16–18, 20–23.)

### C.      **Procedural Background**

On February 16, 2025, Philadelphia commenced this action, naming Mr. Wood, Mr. Christian, and TLC as Defendants and seeking a declaration that it owes no duty to indemnify Mr. Christian or TLC for the judgment entered in the Underlying Lawsuit. (ECF No. 1.) The dispositive question was whether the Umbrella Policy's Automobile Liability (Sublimit) Endorsement (the "Endorsement") limits umbrella coverage to the scope of the Primary Policy, or whether the Umbrella Policy independently extends coverage to Mr. Christian.

Mr. Wood appeared and contested coverage. (ECF No. 11.) Mr. Christian and TLC did not do so. Although both were served with process, neither answered, appeared, nor otherwise defended this action. On December 3, 2025, upon Philadelphia's request, the Clerk entered default against Mr. Christian and TLC under Rule 55(a). (ECF No. 36.)

Mr. Wood and Philadelphia thereafter filed cross-motions for summary judgment addressing the coverage question. (ECF Nos. 41, 43.) On June 4, 2026, the Court granted Philadelphia's motion and denied Mr. Wood's motion. (ECF Nos. 51, 52.) The Court concluded that the Endorsement unambiguously confines the Umbrella Policy's automobile liability coverage to the terms, provisions, and exclusions of the Primary Policy; that the Primary Policy

3

does not cover vehicles owned by TLC; and that the Umbrella Policy affords no coverage to Mr. Christian for the accident. (ECF No. 51, at 11.)

The summary judgment ruling resolved every claim between Philadelphia and Mr. Wood, the lone appearing Defendant. Because the claims against the defaulted Defendants—Mr. Christian and TLC—remained pending, no final judgment disposing of all parties has yet been entered. By Order dated June 9, 2026, the Court directed Philadelphia to advise how it wished to proceed against Mr. Christian and TLC. (ECF No. 53.) Philadelphia responded by filing the instant Motion, which seeks entry of default judgment under Rule 55(b)(2) declaring that Philadelphia owes no duty to indemnify Mr. Christian or TLC. (ECF No. 56.)

## II. Standard of Review

Federal Rule of Civil Procedure 55 establishes a two-step process for obtaining a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, the party seeking relief may apply to the court for entry of a default judgment. Fed. R. Civ. P. 55(b)(2). Where, as here, the plaintiff seeks declaratory relief rather than a sum certain, the default judgment must be entered by the court and may not be entered by the clerk. *See* Fed. R. Civ. P. 55(b)(1)–(2).

Upon the entry of default, the defaulting party is deemed to admit the plaintiff's well-pleaded allegations of fact. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). The defaulting party does not, however, admit conclusions of law, and the Court retains an independent obligation to determine whether the well-pleaded allegations, taken as true, support the relief sought. *Id.*; *see* Fed. R. Civ. P. 55(b)(2).

4

Before entering a default judgment, the Court must satisfy itself of several prerequisites. As a threshold matter, the Court must confirm that it possesses subject-matter jurisdiction over the action and personal jurisdiction over each defaulting party, that venue lies in this district, and that each defaulting party was properly served with process. *See Am. Auto. Ass'n v. AAA Auto Glass, LLC*, No. 1:14-cv-1072 (CMH/TCB), 2015 WL 3545927, at *1–2 (E.D. Va. June 3, 2015); *see also Sealed Plaintiff 1 v. Patriot Front*, No. 3:22-cv-670, 2026 WL 561098, at *7–8 (E.D. Va. Feb. 27, 2026). The Court must also determine that the well-pleaded factual allegations of the Complaint, deemed admitted by the defaulting parties, state a claim upon which the relief sought may be granted. *Ryan*, 253 F.3d at 780. To satisfy that inquiry, the Complaint must contain sufficient factual matter which, accepted as true, to render the requested relief plausible rather than merely possible; "naked assertions" of an entitlement to relief do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007); *accord Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

Moreover, a party is not entitled to a default judgment as a matter of right. *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009). Rather, in determining whether to enter a default judgment, the Court must exercise sound judicial discretion. *Id.* The eight factors the Court may consider include the amount of money potentially involved; whether material issues of fact exist; whether issues of substantial public importance are at issue; whether the default is largely technical; whether the moving party has been substantially prejudiced by the delay; whether the grounds for default are clearly established; how harsh an effect a default judgment might have; and whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect. *Id.* at 506 (quoting 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2685 (3d ed.)).

5

### III.  Discussion

**A.    The Court Has Jurisdiction and Authority to Enter Default Judgment Against TLC and Christian**

Before turning to the discretionary considerations that govern the entry of a default judgment, the Court confirms that the threshold requirements are satisfied:  the Court possesses subject-matter jurisdiction over the action and personal jurisdiction over TLC and Mr. Christian, venue is proper, and both defaulting Defendants were properly served. *See Am. Auto. Ass'n,* 2015 WL 3545927, at *1–2.  Each requirement is met, as discussed below.

**1.    The Court Has Subject-Matter Jurisdiction**

The Court has subject-matter jurisdiction under 28 U.S.C. § 1332.[2]  Philadelphia is a citizen of Pennsylvania, where it is incorporated and maintains its principal place of business, and Mr. Christian and TLC are citizens of Virginia:  TLC is a Virginia corporation with its principal place of business in the Commonwealth, and Mr. Christian and Mr. Wood are domiciled in Virginia. (ECF No. 1; *see* ECF No. 11.)  The parties are therefore completely diverse, and the amount in controversy—measured by the $2,000,000 limit of the Umbrella Policy and the unsatisfied balance of the $4,350,000 judgment entered against Christian—far exceeds $75,000.  The Court has already so held.  In denying Wood's motion to dismiss, it determined that it possesses subject-matter jurisdiction under § 1332 on the basis of the parties' complete diversity, and that joining Pennsylvania National Mutual Casualty Insurance Company—which, like Philadelphia, is a Pennsylvania citizen—would have destroyed that diversity. (ECF No. 23, at 5 n.2; *see* ECF No. 51, at 2.)

---

[2] Section 1332 provides, in pertinent part:  "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a).

### 2.    The Court Has Personal Jurisdiction Over TLC and Christian

The Court likewise has personal jurisdiction over both defaulting Defendants. A federal court sitting in diversity may exercise personal jurisdiction over a defendant who has been properly served and who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court sits. Fed. R. Civ. P. 4(k)(1)(A). Where a defendant is "at home" in the forum state, the court may exercise general jurisdiction over it as to any claim. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation is at home where it is incorporated and where it maintains its principal place of business, and an individual is at home in the state of his domicile. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). TLC is incorporated and principally located in Virginia, and Mr. Christian is a Virginia domiciliary; each is therefore subject to the Court's general personal jurisdiction. The exercise of jurisdiction independently comports with due process because Philadelphia's claim arises from a Virginia motor-vehicle accident and Virginia insurance policies, such that specific jurisdiction would lie as well. *See* Va. Code § 8.01-328.1(A); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### 3.    Venue Is Proper in This District

Venue is proper under 28 U.S.C. § 1391(b). All Defendants reside in Virginia, and TLC and Mr. Christian reside within this District, satisfying § 1391(b)(1). (ECF No. 1 ¶¶ 3–5.) Venue is independently proper under § 1391(b)(2) because a substantial part of the events giving rise to Philadelphia's claim occurred here: the underlying automobile accident took place in Colonial Heights, Virginia, which lies within the Richmond Division of this District. (ECF No. 1 ¶ 8.)

7

### 4.    TLC and Mr. Christian Were Properly Served

Finally, both defaulting Defendants were properly served. An individual may be served by delivering a copy of the summons and the complaint to the individual personally. Fed. R. Civ. P. 4(e)(2)(A). Philadelphia served Mr. Christian in that manner: a process server personally delivered the summons and Complaint to Mr. Christian on May 14, 2025. (ECF No. 18-1.)

A corporation may be served by delivering the summons and complaint to an officer or to any agent authorized by appointment or by law to receive service, or by any means permitted by the law of the State in which the district court sits. Fed. R. Civ. P. 4(e)(1), (h)(1)(A–B). Virginia authorizes service on a domestic corporation through personal service on its registered agent. Va. Code §§ 8.01-299(1), 13.1-836. TLC was served in that manner, as Philadelphia effected personal service of the summons and Complaint upon TLC's registered agent, Tamara Blow, on August 28, 2025. (ECF No. 30.) Service on TLC was therefore proper.

Because Mr. Christian is an individual, the Court has also confirmed compliance with the Servicemembers Civil Relief Act. Philadelphia has filed an affidavit, supported by a certificate from the Department of Defense Manpower Data Center, establishing that Mr. Christian is not in military service. (ECF No. 35; *see* ECF No. 31-4.) *See* 50 U.S.C. § 3931(b).

With service properly effectuated and the time to respond expired, the Clerk entered the default of both TLC and Mr. Christian under Rule 55(a) on December 3, 2025. (ECF No. 36.)

### B.    The Admitted Allegations Establish That Philadelphia Owes No Duty to Indemnify

By defaulting, TLC and Mr. Christian admitted the well-pleaded factual allegations of the Complaint. *Ryan*, 253 F.3d at 780. The Court must nonetheless satisfy itself that those admitted allegations state a claim for the declaratory relief Philadelphia seeks—that is, that they render

8

plausible, and not merely possible, Philadelphia's entitlement to a declaration of no coverage. *See Twombly*, 550 U.S. at 555. The Complaint pleads two counts of declaratory relief: Count I seeks a declaration that no coverage exists under the Primary Policy, and Count II seeks a declaration that no coverage exists under the Umbrella Policy. (ECF No. 1 ¶¶ 26–32.) The admitted allegations establish both.

### 1.    The Primary Policy Affords No Coverage (Count I)

Count I seeks a declaration that the Primary Policy affords no coverage for the judgment entered against Mr. Christian. (ECF No. 1 ¶¶ 26–28.) The admitted allegations establish that claim. The Primary Policy is a business automobile liability policy that, by its terms, covers only hired autos—those TLC leases, hires, rents, or borrows—and non-owned autos that TLC does not own but uses in its business. (ECF No. 1 ¶ 16.) Mr. Christian, however, was operating a vehicle that TLC owned. (ECF No. 1 ¶¶ 11, 17; ECF No. 40 ¶ 1.) A vehicle owned by TLC is neither a hired auto nor a non-owned auto, and so is not a "covered auto" under the Primary Policy. (ECF No. 1 ¶¶ 17, 23.) The admitted allegations therefore establish that the Primary Policy does not cover Mr. Christian for the underlying judgment, stating Philadelphia's claim under Count I.

### 2.    The Umbrella Policy Affords No Coverage (Count II)

Count II seeks a declaration that the Umbrella Policy affords no coverage. (ECF No. 1 ¶¶ 29–32.) The admitted allegations establish that claim as well. The Umbrella Policy's Automobile Liability (Sublimit) Endorsement provides that the umbrella automobile coverage follows the provisions, exclusions, and limitations of the applicable "underlying insurance" shown in the Schedule of Underlying Insurance—here, the Primary Policy—and that the umbrella coverage "will not be broader than that provided by the applicable 'underlying

9

insurance.'" (ECF No. 1 ¶¶ 20–22.) Because the Primary Policy does not cover vehicles that TLC owns, and the Umbrella Policy can be no broader than the Primary Policy, the Umbrella Policy likewise affords no coverage to Mr. Christian for the accident. (ECF No. 1 ¶¶ 22–23.) The admitted allegations thus state Philadelphia's claim under Count II.

These conclusions are not merely plausible on the pleadings; the Court has already reached them as a matter of law. In granting summary judgment for Philadelphia and against Mr. Wood—the only Defendant to contest coverage—the Court held that the Endorsement unambiguously confines the Umbrella Policy's automobile liability coverage to the scope of the Primary Policy, that the Primary Policy does not cover the TLC-owned vehicle Mr. Christian was driving, and that neither policy affords coverage. (ECF No. 51, at 11.) The allegations admitted by TLC and Mr. Christian mirror the facts on which that ruling rests. The well-pleaded allegations therefore state a claim for the declaratory relief Philadelphia seeks under both counts. And because Philadelphia seeks only a declaration of non-coverage rather than a monetary award, no inquiry into unliquidated damages is required before judgment may enter. *See Ryan*, 253 F.3d at 780–81.

## C.    The Discretionary Factors Confirm That Default Judgment Is Warranted

The relief Philadelphia seeks against the defaulted Defendants consists of a declaration that no coverage is owed. The Fourth Circuit has sustained this form of relief on materially identical facts. In *State Farm Fire & Casualty Co. v. Akamiro*, the Court of Appeals affirmed a district court's entry of default judgment on an unopposed Rule 55 motion, in favor of an insurer seeking a declaratory judgment of no coverage against a non-appearing insured. 549 F. App'x 212, 212–13 (4th Cir. 2014) (per curiam). *Akamiro* confirms that an insurer's declaratory action is a proper vehicle for default judgment under Rule 55(b)(2), and that a court may enter such a

10

judgment declaring the absence of coverage as to a defendant who has failed to plead or otherwise defend. Subject to the Court's independent obligation to satisfy itself that the well-pleaded allegations support the declaration sought, nothing in the nature of the relief Philadelphia pursues against TLC and Christian places it beyond the reach of Rule 55(b)(2).

Following the approach the Court took in a case on all fours with that at bar—*Akamiro*, the Court weighs the discretionary factors bearing on whether to enter a default judgment. *Akamiro*, No. 2:13-cv-55, at *4–9. Each confirms that default judgment is appropriate here. *See EMI April Music*, 618 F. Supp. 2d at 505–06; *Am. Strategic Ins. Corp. v. Covington*, No. 3:24-cv-705 (RCY), 2025 WL 1869583, at *2–3 (E.D. Va. July 7, 2025) (applying these factors to enter an insurer's declaratory default judgment of no coverage).

First, since Philadelphia seeks a declaration of no coverage rather than a monetary award, no sum is directly at stake. The declaration will nonetheless affect substantial financial interests, as the Umbrella Policy carries a $2,000,000 limit and the unsatisfied portion of the underlying judgment against Christian exceeds that figure. (ECF No. 40-1, at 11; ECF No. 42 ¶ 39 & n.5.) That substantial sums may be affected does not weigh against default judgment. Coverage turns on the terms of the policies, and a declaration as to Christian and TLC would simply extend to them the ruling the Court has already entered on the merits. *Cf. EMI April Music*, 618 F. Supp. 2d at 506. Indeed, since "adherence to the terms and conditions of an insurance policy are well-known to be prerequisite to coverage, the fact that such an undetermined amount of money may be affected by default judgment does not shock the conscience." *Akamiro*, No. 2:13-cv-55, at *7 (citing *State Farm Fire & Cas. Co. v. Scott*, 372 S.E.2d 383, 385 (1988)).

Second, the case presents no disputed issue of material fact. The existence and terms of the Primary and Umbrella Policies, TLC's ownership of the vehicle Christian was driving,

11

Christian's permissive use, and the entry of the underlying judgment are established by the parties' stipulations and admitted by the default of Christian and TLC; while the dispositive question of coverage has been resolved by the Court as a matter of law. (ECF Nos. 40, 40-1, 51, 52.)

Third, the action raises no issue of substantial public importance. This matter turns on settled principles of Virginia insurance-contract law to the terms of a single endorsement, and presents no question that should be reserved from disposition by default. *See Akamiro*, No. 2:13-cv-55, at *8; *EMI April Music*, 618 F. Supp. 2d at 506.

Fourth, the default is not merely technical. Christian and TLC were served with process and have wholly failed to appear, answer, or otherwise defend at any point since the Clerk entered their default on December 3, 2025. (ECF Nos. 18-1, 36; *see supra* Part III.A.4.) Their default reflects a complete abdication of the litigation rather than a technical lapse.

Fifth, Philadelphia has been prejudiced by the continued delay. Although the Court has resolved the coverage question in Philadelphia's favor against the only Defendant to appear, Philadelphia cannot obtain a final, enforceable adjudication of its obligations to Christian and TLC—or the entry of final judgment and the closure of this action—while those Defendants remain in default. The resulting delay is prejudicial. *See EMI April Music*, 618 F. Supp. 2d at 506.

Sixth, the grounds for default are clearly established. The record reflects that Christian and TLC were served, that the time to respond has long since expired, that the Clerk entered default under Rule 55(a), and that Philadelphia has satisfied Rule 55's two-step process. (ECF No. 36.)

Seventh, the hardship worked by a default judgment is not unreasonable. A declaration of no coverage will deny Mr. Christian and TLC the benefit of indemnity under the Umbrella Policy, but that consequence follows from their repeated failures to respond. Moreover, the coverage question has already been litigated and decided against Mr. Wood on the merits, so Mr. Christian and TLC forfeit nothing through their default that they could have secured by appearing. (ECF Nos. 51, 52.)

Finally, nothing in the record suggests that the default of Mr. Christian or TLC resulted from a good-faith mistake or excusable neglect. *See EMI April Music*, 618 F. Supp. 2d at 506. For these reasons, the discretionary factors confirm that entry of a default judgment is appropriate.

### D.    The Multi-Defendant Posture Presents No Obstacle to Default Judgment

Because two Defendants remain in default while a third litigated the coverage question to judgment, the Court addresses the principle of *Frow v. De La Vega*, under which a court ordinarily should not enter a default judgment against a defaulting defendant where doing so would be inconsistent with a judgment on the merits rendered in favor of an answering co-defendant. 82 U.S. (15 Wall.) 552, 554 (1872); *see AdvanFort Co. v. Zamil Offshore Servs. Co.*, 134 F.4th 760, 768–69 (4th Cir. 2025). Here, the Court has resolved the coverage question on the merits in Philadelphia's favor and against the sole Defendant to appear and defend. The decisions applying *Frow* withhold or defer default judgment only to avoid binding a defaulted defendant to a judgment *inconsistent* with one an appearing co-defendant may yet obtain. *See Progressive N. Ins. Co. v. M&J Auto Ctr., LLC*, No. 4:22-cv-13, 2022 WL 22804555, at *2–3 (E.D. Va. Nov. 14, 2022). Here, Mr. Wood has already litigated the coverage question to a final adjudication on the merits and lost. A default judgment declaring that Philadelphia owes no

13

coverage to TLC and Mr. Christian conforms to that ruling rather than risking conflict with it. Accordingly, the multi-defendant posture of this action presents no obstacle to the entry of default judgment against TLC and Mr. Christian under Rule 55(b)(2), and the entry of that judgment disposes of the last remaining claims in this action.

### IV.  Conclusion

For the reasons set forth above, the Court will grant Philadelphia's Motion for Default Judgment (ECF No. 56).

An appropriate Final Order shall issue.

Date: 7/27/26                                                   /s/
Richmond, Virginia                               M. Hannah Lauck
                                                 Chief United States District Judge